IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| INSECTERGY IP HOLDINGS LLC, | ) ) | |
| | ) | Civil Action No.:_____ |
| Plaintiff, | ) ) | |
| | ) | JURY TRIAL DEMANDED |
| -against- | ) ) | |
| EMPIRE HEMP CO. (d/b/a EMPIRE NY CANNABIS), | ) ) ) | |
| | ) | |
| Defendants. | ) ) | |

## COMPLAINT FOR PATENT INFRINGEMENT

Plaintiff, Insectergy IP Holdings LLC ("Plaintiff"), by and through its undersigned attorneys, for its Complaint against Defendant Empire Hemp Co. (d/b/a Empire NY Cannabis) ("Defendant"), alleges and avers as follows:

## NATURE OF THE ACTION

1.      This is an action for infringement of United States Patent Nos. 11,985,005 and 11,180,781 arising under the patent laws of the United States, 35 U.S.C. §§ 100 et seq., specifically including 35 U.S.C. § 271. This action relates to methods of extracting terpenes and cannabinoids from cannabis plant material and producing cannabinoid-containing foodstuffs and other products.

## THE PARTIES

2.      Plaintiff is a limited liability company organized and existing under the laws of Wyoming, with its principal place of business at 30 North Gould Street #11503, Sheridan, WY 82801. Plaintiff is a cannabis technology company that develops hemp- and cannabis-based compounds and products.

3.      On information and belief, Defendant is a corporation organized and existing under the laws of Delaware with its principal place of business at 204 East Main Street, Batavia, New York 14020. On information and belief, Defendant is a cannabis company involved in the development, commercialization, and sale of cannabinoid products.

## JURISDICTION AND VENUE

4.      This Court has subject matter jurisdiction over this action under 28 U.S.C. §§ 1331 (federal question), 1332(a) (diversity), and 1338(a) (patent infringement).

5.      Defendant is subject to personal jurisdiction in this Court because, among other things, Defendant has purposely availed itself of the rights and benefits of the laws of New York by engaging in systematic and continuous contacts with the state such that it should reasonably anticipate being haled into court here. For example, Defendant is registered to conduct business in New York under DOS ID number 6619480, has its principal place of business at 204 East Main Street, Batavia, New York 14020, and maintains a manufacturing facility in Batavia, New York.

6.      Venue is proper in this district under 28 U.S.C. § 1400(b) because the defendant has committed acts of infringement and has a regular and established place of business in this District.

## PATENTS-IN-SUIT

7.      Plaintiff is the owner of all rights, title, and interest in and to United States Patent No. 11,985,005 ("the '005 Patent"), entitled "Cannabis extraction methods," duly and legally issued by the United States Patent and Trademark Office ("USPTO") on May 21, 2024, and attached hereto as Exhibit 1.

8.      Plaintiff is the owner of all rights, title, and interest in and to United States Patent No. 11,180,781 ("the '781 Patent," and together with the '005 Patent "the Patents-in-Suit"), entitled "Biosynthetic cannabinoid production methods," duly and legally issued by the USPTO on November 23, 2021, and attached hereto as Exhibit 2.

## FACTUAL BACKGROUND

9.      Plaintiff Insectergy is a U.S. State of Wyoming-based cannabis technology company that focuses on legal development of hemp- and cannabis-based compounds and products. Products made from Plaintiff's patented technologies are produced and used in countries across the world. Plaintiff's business encompasses a wide array of technologies, including but not limited to farming systems, extraction of cannabis oil and terpenes, and manufacturing of products such as foodstuffs, vape cartridges, and other cannabis products. Plaintiff has developed a diverse range of hemp- and cannabis-based products and other consumer products for both recreational and medical purposes under a portfolio of distinct brands in the United States. Plaintiff has focused on the entire cannabis supply chain in the United States through its investment in growing capability and in processing, extraction, and finished goods manufacturing facilities.

10.     Plaintiff is the owner of the Patents-in-Suit.

11.    The '005 Patent discloses a novel method for targeted extraction of terpenes and cannabinoids from cannabis plant material in a safe, clean, and precise manner. The method of the '005 Patent extracts terpenes and oil from cannabis plant material using supercritical carbon dioxide ($CO_2$), wherein the oil is extracted at a relatively higher temperature and pressure than the terpenes. The oil is then distilled to produce a distillate or mixed with an ingredient to produce a multifunctional composition. Prior to this invention, cannabinoids and terpenes were extracted simultaneously, resulting in challenges in obtaining targeted dosage of the cannabinoid in the product and leading to inferior product quality and consistency.

12.    The patented method of the '005 Patent introduced separate steps for first extracting terpenes and then extracting the cannabinoids from the cannabis plant material. The technology covered by the '005 Patent is now widely adopted by cannabis technology companies in the United States. The innovation was recognized in the industry as it has been cited in over a dozen subsequent U.S. patents, reflecting its foundational nature in the field.

13.    The '781 Patent relates to novel foodstuff compositions comprising a cannabis oil distillate. The novel foodstuff compositions disclosed in the '781 Patent comprise either a distilled biosynthetic cannabinoid derived from a genetically modified organism or a distilled non-biosynthetic cannabinoid derived from cannabis plants.

14.    The compositions of the '781 Patent include various ingredients and may be processed, for example by cooking, dehydration, or extrusion. Prior to the invention of the '781 Patent, cannabis-derived foodstuff compositions in the U.S. were not standardized. These prior compositions included a hodge-podge of various ingredients processed in a multitude of ways, resulting in non-standardized products in various regions of the country and making it impossible to assure consistent, high-quality cannabis products. The technology covered by the '781 Patent has also been incorporated into Plaintiff's flagship product line and is now widely adopted by cannabis technology companies in the United States. Like the '005 Patent, the innovation of the '781 Patent has been recognized by the industry and been cited by over a dozen subsequent U.S. patents, reflecting its foundational nature in the field.

15.    Plaintiff devoted substantial resources to the research, development, and commercialization of the inventions disclosed in the '005 and '781 Patents. Plaintiff's products that embody those patented inventions have achieved worldwide recognition, market success, and product improvements, and have contributed to its reputation as a leader in the cannabis industry.

16.    Defendant is a cannabis company involved in the development, commercialization, and sale of cannabinoid products. Defendant is a New York Office of Cannabis Management (OCM) licensed Adult Use Cannabis Processor and

Cultivator. Defendant's Current Good Manufacturing Practice (cGMP) Certified Facility is in Batavia, NY, with OCM License Identification numbers OCM-AUCP-22-000015 and OCM-AUCC-22-000256, and a Business Legal Name Empire Hemp Co LLC.

17.    Defendant also maintains a retail location at 204 East Main Street, Batavia, New York 14020, and operates the websites http://www.empirehempco.com and http://www.empirenycannabis.com.

18.    Upon information and belief, Defendant has engaged in the unauthorized manufacture, use, sale, offer for sale, and/or importation of products and/or services that infringe one or more claims of each of the '005 and '781 Patents.

19.    Upon information and belief, Defendant produces high-quality, pure, and potent cannabis products using CO2 extraction. As detailed below, on information and belief, Defendant manufactures products such as vape cartridges ("carts"), gummies, and Pre-Rolled cannabis flower cigarettes infused with CO2 extract, in addition to Gummies including a distilled cannabis oil. On information and belief, the aforesaid products are currently commercially available in the United States and are for sale at no less than a dozen cannabis dispensaries in the Western NY region, including at Defendant's own retail location and several other locations in the Western District of New York. On information and belief, the success of Defendant's products is based, at least in part, on Defendant's unauthorized use of the CO2-extraction process disclosed and claimed in the '005 Patent, which enables the production of a cannabis extract from cannabis material, and the '781 Patent, which describes standardized cannabis distillate for enhanced dosage consistency and product quality.

20.    On information and belief, Defendant is aware, or should be aware, that the extraction process it uses to manufacture its products, as well as the products themselves, infringe one or more claims of each of the '005 and '781 Patents.

## PATENT INFRINGEMENT

### Count I: Infringement of U.S. Patent No. 11,986,005

21.    Plaintiff re-alleges and incorporates herein by reference the allegations contained in Paragraphs 1-20 above.

22.    The '005 Patent relates to a method to extract terpenes and oil from cannabis plant material using supercritical carbon dioxide (CO2), wherein the oil is extracted at a higher temperature and pressure relative to the pressure and temperature at which the terpenes are extracted.

23.    The claims of the '005 Patent carry a presumption of validity under 35 U.S.C. § 282(a) and are enforceable.

24.     Plaintiff is the owner of the entire right, title, and interest in the '005 Patent by assignment, and possesses the right to sue for and obtain equitable relief and damages for infringement of the '005 Patent.

25.     Defendant has directly infringed and continues to directly infringe the '005 Patent, either literally or under the doctrine of equivalents, by making, using, selling, and offering for sale in the United States, and/or importing into the United States products that are produced using the patented method of the '005 Patent, including but not limited to vape cartridges that it identifies by the designations Strawberry Cough Vape Cart, Berry White Vape Cart, Wedding Cake Vape Cart, Purple Punch Vape Cart, and Blazing Sword Vape Cart ("the Accused Carts"); cannabinoid-infused gummies that it identifies as Grape Gummies, Orange Gummies, and Cherry Gummies ("the Accused Gummies"); and cannabinoid-infused pre-rolled cannabis flower cigarettes that it identifies as Ambrosia Infused Pre-Rolls ("the Accused Pre-Rolls", and together with the Accused Carts and the Accused Gummies, "the Accused Products"), without authority or license from Plaintiff. More particularly, upon information and belief, Defendant has infringed and continues to infringe at least Claim 1 of the '005 Patent because the Accused Products contain each and every limitation of Claim 1.

26.     Claim 1 of the '005 Patent recites:

> 1. A method to produce a product from cannabis plant material, said cannabis plant material includes a terpene and an oil, said method comprises:
>
> (a) extracting said terpene and said oil from said cannabis plant material with supercritical carbon dioxide according to a method including:
>
> (a1) extracting said terpene from said cannabis plant material at a first temperature and a first pressure to produce a first extract, said first extract comprises said terpene; and
>
> (a2) after step (a1), extracting said oil from said cannabis plant material at a second temperature and a second pressure to produce a second extract; said second extract comprises said oil; wherein said second temperature is greater than said first temperature and said second pressure is greater than said first pressure; and
>
> (b) after step (a2), producing said product from at least a portion of said second extract, wherein said product comprises one or more products selected from the group consisting of:

(b1) a distillate, wherein said product comprises said distillate produced by distilling at least a portion of said second extract to produce said distillate; and

(b2) a multifunctional composition, wherein said product comprises said multifunctional composition produced by mixing at least a portion of said second extract with an ingredient to produce said multifunctional composition.

27.    On information and belief, the Accused Products contain each and every limitation of Claim 1, as well as many of the dependent claims, of the '005 Patent.

28.    On information and belief, Defendant performs a process for producing a product from cannabis plant material as recited in the preamble of claim 1, and that process includes extracting said terpene and said oil from said cannabis plant material with supercritical carbon dioxide as specified in step (a) of claim 1. Defendant's own marketing materials confirm that it uses CO2 extraction to extract terpenes and cannabis oil from cannabis plant material and produce vape cartridges using those extracts. *See generally* Chris VanDusen, <u>Why We Chose CO2 Extraction at Empire for Our Vape Carts</u>, Empire NY Cannabis Blog, https://empirenycannabis.com/blogs/news/why-we-chose-co2-extraction-at-empire-for-our-vape-carts (last visited August 13, 2025). According to that blog article, Empire "believe(s) that CO2 extraction is the best method for producing high-quality, pure cannabis extracts, and [it] would like to share the benefits of this method with [its] customers." *Id.*

29.    On information and belief, the process Defendant uses to produce the Accused Products includes the steps of extracting terpenes from cannabis plant material at a first temperature and pressure to produce an extract comprising terpenes as specified in step (a1) of claim 1, and then extracting cannabis oil from the cannabis plant material at a second temperature and pressure that are relatively higher than the first temperature and pressure to produce an extract comprising cannabis oil as specified in step (a2) of claim 1. According to Defendant's blog, another reason it chose CO2 extraction is that "CO2 extraction is a precise and efficient method of extracting cannabinoids and terpenes." *Id.* This is because "CO2 can be manipulated to act as a solvent at specific temperatures and pressures, allowing for targeted extraction of specific compounds." *Id.*

30.    On information and belief, Defendant's process for producing the Accused Carts includes mixing the extracted cannabis oil with an ingredient such as the extracted terpenes, as specified in step (b2) of claim 1. Defendant's product pages for each of the Accused Carts states: "INGREDIENTS: CO2 Full spectrum cannabis extract, cannabis derived terpenes." *E.g.*, <u>Strawberry Cough Vape Cart</u>, Empire NY Cannabis Products,

https://empirenycannabis.com/collections/carts/products/strawberry-cough-5-gram-cart (last visited August 13, 2025).

31.    On information and belief, Defendant's process for producing the Accused Gummies includes mixing the extracted cannabis oil with an ingredient, such as sugar, syrup, or gelatin, as specified in step (b2) of claim 1. Defendant's product pages for each of the Accused Gummies states: "INGREDIENTS: Corn Syrup, sugar, gelatin (bovine), potassium sorbate, citric acid, flavoring, soy lecithin, Cannabis distillate, food coloring." *E.g.*, Grape Gummies, Empire NY Cannabis Products, https://empirenycannabis.com/collections/gummies/products/grape-gummies (last visited August 13, 2025).

32.    On information and belief, Defendant's process for producing the Accused Pre-Rolls includes mixing the extracted cannabinoid with an ingredient, such as cannabis flower, as specified in step (b2) of claim 1. Defendant's product page for the Accused Pre-Rolls states: "INGREDIENTS: Cannabis Flower, Pre-roll Paper, Cannabis Extract Oil, Cannabis Terpenes." Ambrosia – 5 Pack 1G Infused Pre-Rolls, https://empirenycannabis.com/collections/pre-rolls/products/ambrosia-1g-infused-5-pack-pre-rolls (last visited August 13, 2025).

### Count II: Infringement of U.S. Patent No. 11,180,781

33.    Plaintiff re-alleges and incorporates herein by reference the allegations contained in Paragraphs 1-20 above.

34.    The '781 Patent relates to novel foodstuff compositions comprising a cannabis oil distillate.

35.    The claims of the '781 Patent carry a presumption of validity under 35 U.S.C. § 282(a) and are enforceable.

36.    Plaintiff is the owner of the entire right, title, and interest in the '781 Patent by assignment, and possesses the right to sue for and obtain equitable relief and damages for infringement of the '781 Patent.

37.    Defendant has directly infringed and continues to directly infringe the '781 Patent, either literally or under the doctrine of equivalents, by making, using, selling, and offering for sale in the United States, and/or importing into the United States the Accused Gummies, embodying the invention defined by one or more claims of the '781 Patent, without authority or license from Plaintiff. More particularly, upon information and belief, Defendant has infringed and continues to infringe at least Claims 48, 50, 61, and 67 of the '781 Patent.

38.    Claim 48 of the '781 Patent recites:

48.  A foodstuff comprising [1] a distilled composition comprising a biosynthetic cannabinoid derived from a genetically modified microorganism or a non-biosynthetic cannabinoid derived from cannabis plants, wherein [2] the foodstuff is selected from the group consisting of ada, bagels, baked goods, beverages, biscuits, bitterballen, bonda, breads, cakes, candies, cereals, chips, chocolate bars, carbonated soft drinks, carbonated drinks, chocolate, coffee, cokodok, confectionery, cookies, cooking batter, corn starch mixtures, crackers, crepes, croissants, croquettes, croutons, dolma, dough, doughnuts, energy bars, flapjacks, french fries, frozen custard, frozen desserts, frying cakes, fudge, gelatin mixes, granola bars, gulha, hardtack, ice cream, khandvi, khanom buang, krumpets, meze, mixed flours, muffins, multi-grain snacks, nachos, nian gao, noodles, nougat, onion rings, pakora, pancakes, panforte, pastas, pastries, pie crust, pita chips, pizza, pofferties, pretzels, protein powders, pudding, rice krispie treats, sesame sticks, smoothies, snacks, soft drinks, sport drinks, sparkling drinks, specialty milk, tele-bhaja, tempura, toffee, tortillas, totopo, turkish delights, and waffles.

39.    The Accused Gummies contain as an ingredient "[c]annabis distillate." *E.g.*, Grape Gummies, Empire NY Cannabis Products, https://empirenycannabis.com/collections/gummies/products/grape-gummies (last visited August 13, 2025). That ingredient corresponds to "[1] a distilled composition comprising a non-biosynthetic cannabinoid derived from cannabis plants" as recited in claim 48.

40.    The Accused Gummies are gummy candies, which corresponds to "[2] the foodstuff is selected from the group consisting of . . . candies, . . . [and] gelatin mixes" as recited in claim 48.

41.    Claim 50 of the '781 Patent recites:

50.  A cooked food composition, wherein [1] the composition is cooked in one or more selected from the group consisting of an oven, a dryer, a dehydrator, and a freeze dryer, [2] the composition includes: a mixture comprising water, a distilled biosynthetic cannabinoid derived from a genetically modified organism or a distilled non-biosynthetic cannabinoid derived from cannabis plants, and two or more ingredients selected from the group consisting of insects, a binding agent, and an acid;

wherein:

said insects are selected from the group consisting of an insect lipid, Orthoptera order of insects, crickets, katydids, weta, lubber, acrida, locusts, cicadas, Hermetia illucens, beetles, mealworms, yellow mealworm beetles, and *Tenebrio molitor*;

said binding agent is selected from the group consisting of agar, agave, alginin, arrowroot, carrageenan, collagen, cornstarch, egg whites, furcellaran, gelatin, guar gum, honey, katakuri starch, locust bean gum, pectin, potato starch, protein, *psyllium* husks, sago, sugar, syrup, tapioca, vegetable gum, and xanthan gum;

said acid is selected from the group consisting of acetic acid, ascorbic acid, benzoic acid, citric acid, formic acid, fumaric acid, hydrochloric acid, lactic acid, malic acid, nitric acid, phosphoric acid, propionic acid, salicylic acid, sulfuric acid, and tartaric acid.

42.     On information and belief, the Accused Gummies are cooked in one or more of an oven, a dryer, a dehydrator, and/or a freeze drier as specified in claim 50.

43.     On information and belief, the Accused Gummies include water in their composition.

44.     The Accused Gummies contain as an ingredient "[c]annabis distillate." *E.g.*, Grape Gummies, Empire NY Cannabis Products, https://empirenycannabis.com/collections/gummies/products/grape-gummies (last visited August 13, 2025). That ingredient corresponds to the "distilled non-biosynthetic cannabinoid derived from cannabis plants" limitation of claim 50.

45.     The Accused Gummies contain as an ingredients, "Corn Syup, sugar, [and] gelatin." *Id.* Those ingredients correspond to the "binding agent…selected from the group consisting of…gelatin,…sugar, [and] syrup" limitation of claim 50.

46.     The Accused Gummies contain as an ingredient "citric acid." *Id.* That ingredient corresponds to the "acid…selected from the group consisting of…citric acid" limitation of claim 50.

47.     Claim 61 of the '781 Patent recites:

61.  A dehydrated food composition including: a mixture comprising water, a distilled biosynthetic cannabinoid derived from a genetically modified microorganism or a

distilled non-biosynthetic cannabinoid derived from cannabis plants, and two or more ingredients selected from the group consisting of insects, a binding agent, and an acid;

wherein:

said insects are selected from the group consisting of an insect lipid, Orthoptera order of insects, crickets, katydids, weta, lubber, acrida, locusts, cicadas, Hermetia illucens, beetles, mealworms, yellow mealworm beetles, and *Tenebrio molitor*;

said binding agent is selected from the group consisting of agar, agave, alginin, arrowroot, carrageenan, collagen, cornstarch, egg whites, furcellaran, gelatin, guar gum, honey, katakuri starch, locust bean gum, pectin, potato starch, protein, *psyllium* husks, sago, sugar, syrup, tapioca, vegetable gum, and xanthan gum;

said acid is selected from the group consisting of acetic acid, ascorbic acid, benzoic acid, citric acid, formic acid, fumaric acid, hydrochloric acid, lactic acid, malic acid, nitric acid, phosphoric acid, propionic acid, salicylic acid, sulfuric acid, and tartaric acid.

48.    On information and belief, the Accused Gummies are a dehydrated food composition as specficed in the preamble of claim 61.

49.    On information and belief, the Accused Gummies include water in their composition as specified in claim 61.

50.    The Accused Gummies contain as an ingredient "[c]annabis distillate." *E.g.*, Grape Gummies, Empire NY Cannabis Products, https://empirenycannabis.com/collections/gummies/products/grape-gummies (last visited August 13, 2025). That ingredient corresponds to the "distilled non-biosynthetic cannabinoid derived from cannabis plants" limitation of claim 61.

51.    The Accused Gummies contain as an ingredients, "Corn Syup, sugar, [and] gelatin." *Id.* Those ingredients correspond to the "binding agent…selected from the group consisting of…gelatin,…sugar, [and] syrup" limitation of claim 61.

52.    The Accused Gummies contain as an ingredient "citric acid." *Id.* That ingredient corresponds to the "acid…selected from the group consisting of…citric acid" limitation of claim 61.

53.    Claim 67 of the '781 Patent recites:

> 67.  An extruded and cooked candy foodstuff composition, wherein the composition is cooked in one or more selected from the group consisting of a dryer, a dehydrator, and a freeze dryer, the composition includes: a mixture comprising water, a distilled biosynthetic cannabinoid derived from a genetically modified microorganism or a distilled non-biosynthetic cannabinoid derived from cannabis plants, and two or more ingredients selected from the group consisting of insects, a binding agent, an oil, and an acid;
>
> wherein:
>
> said insects are selected from the group consisting of an insect lipid, Orthoptera order of insects, crickets, katydids, weta, lubber, acrida, locusts, cicadas, Hermetia illucens, beetles, mealworms, yellow mealworm beetles, and *Tenebrio molitor*;
>
> said binding agent is selected from the group consisting of agar, agave, alginin, arrowroot, carrageenan, collagen, cornstarch, egg whites, furcellaran, gelatin, guar gum, honey, katakuri starch, locust bean gum, pectin, potato starch, protein, *psyllium* husks, sago, sugar, syrup, tapioca, vegetable gum, and xanthan gum;
>
> said oil is selected from the group consisting of almond oil, an animal-based oil, apricot kernel oil, avocado oil, brazil nut oil, butter, canola oil, cashew oil, cocoa butter, cooking oil, corn oil, cottonseed oil, fish oil, grapeseed oil, hazelnut oil, insect oil, lard, lard oil, macadamia nut oil, mustard oil, olive oil, palm kernel oil, palm oil, peanut oil, rapeseed oil, rice oil, rice bran oil, safflower oil, semi-refined sesame oil, semi-refined sunflower oil, sesame oil, soybean oil, tallow of beef, tallow of mutton, vegetable oil, and walnut oil;
>
> said acid is selected from the group consisting of acetic acid, ascorbic acid, benzoic acid, citric acid, formic acid, fumaric acid, hydrochloric acid, lactic acid, malic acid, nitric acid, phosphoric acid, propionic acid, salicylic acid, sulfuric acid, and tartaric acid.

54.    On information and belief, the Accused Gummies are extruded and cooked as recited in the preamble of claim 67.

55.    The Accused Gummies are gummy candies, which is equivalent to the "candy foodstuff composition" as recited in claim 67.

56.    On information and belief, the Accused Gummies are cooked in "one or more selected from the group consisting of a dryer, a dehydrator, and a freeze dryer" as specified by claim 67.

57.    On information and belief, the Accused Gummies include water in their composition, as specified by claim 67.

58.    The Accused Gummies contain as an ingredient "[c]annabis distillate." *E.g.*, Grape Gummies, Empire NY Cannabis Products, https://empirenycannabis.com/collections/gummies/products/grape-gummies (last visited July 13, 2025). That ingredient corresponds to the "distilled non-biosynthetic cannabinoid derived from cannabis plants" limitation of claim 67.

59.    The Accused Gummies contain as an ingredients, "Corn Syup, sugar, [and] gelatin." *Id.* Those ingredients correspond to the "binding agent…selected from the group consisting of…gelatin,…sugar, [and] syrup" limitation of claim 67.

60.    The Accused Gummies contain as an ingredient "citric acid." *Id.* That ingredient corresponds to the "acid…selected from the group consisting of…citric acid" limitation of claim 67.

61.    In view of the foregoing, on information and belief, Defendant infringes at least claim 1 of the '005 Patent and at least claims 48, 50, 61, and 67 of the '781 Patent in violation of 35 U.S.C. § 271.

62.    Plaintiff's investigation of Defendant's operations and manufacturing process is ongoing.

63.    To the extent it is determined that Defendant uses Plaintiff's patented extraction process and/or makes, uses, sells, offers for sale, and/or imports products that infringe the patents-in-suit, Defendant directly infringes the Patents-in-Suit in violation of 35 U.S.C. 271(a).

64.    To the extent that Defendant and/or third-party contractors under the direction of Defendant uses Plaintiff's patented extraction process and/or makes, uses, sells, offers for sale, and/or imports products that infringe the Patents-in-Suit, Defendant infringes Patents-in-Suit in violation of 35 U.S.C. 271(g).

65.    On information and belief, Defendant, without authority, sells, offers to sell, and/or uses Plaintiff's patented process and/or products within the United States.

66.    On information and belief, the cannabis distillate used in the Accused Products is not materially changed by subsequent processes and/or does not become a trivial and/or nonessential component of another product.

67.    Plaintiff has suffered injury, including irreparable injury, because of Defendant's infringement.

68.    Plaintiff is therefore entitled to preliminary and permanent injunctive relief restraining and enjoining Defendant from infringing the patents-in-suit.

69.    Because of Defendant's infringement, Plaintiff is suffering and will continue to suffer substantial damages in an amount to be determined at trial.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff requests that this Court grant the following relief:

1. A judgment that Defendant has infringed one or more claims of each of the Patents-in-Suit;

2. An order preliminarily and permanently restraining and enjoining Defendant, its officers, agents, attorneys, and employees, and those acting in privity or concert with Defendant, from engaging in the manufacture, use, offer for sale, or sale within the United States, or importation into the United States, of the Accused Products until after the expiration date of the '005 Patent;

3. Damages or other monetary relief to Plaintiff;

4. Costs and reasonable attorneys' fees relating to this action in accordance with 35 U.S.C. § 285; and

5. Such other and further relief as the Court may deem just and proper.

## DEMAND FOR TRIAL BY JURY

Plaintiff demands a trial by jury on all issues that are so triable.


August 14, 2025
Buffalo, New York

Respectfully submitted,

Hon. Eugene F. Pigott, Jr.
Andrew M. Nason (*admission pending*)
PIGOTT LAW GROUP
*Attorneys for Plaintiff*
5820 Main Street, Suite 200
Buffalo, NY 14221
(716) 919-4100